Rothschild, Appellant, *v.* N. Y. Life Insurance Co.

Argued May 4, 1932.

**556**

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-
HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Frank J. Thomas,* and with him *Leonard H. Krieger,*
for appellant.—The application of the insured for re-
instatement was a part of the contract, and not being
attached to the policy it was inadmissible in evidence
and was not available to the defendant as a means of
establishing a defense: Lenox v. Insurance Company,
165 Pa. 575; South Side Trust Co. v. Eureka Life Ins.
Co., 74 Pa. Superior Ct. 566; MacDonald v. Metro-
politan Life Insurance Company, 304 Pa. 213.

*William H. Eckert,* and with him *Louis H. Cooke*
and *Smith, Buchanan, Scott and Gordon,* for appel-
lee, cited: New York Life Insurance Co. v. Buchberg,
228 N. W. 770; New York Life Insurance Co. v. Rosen,
236 N. Y. S. 659; State Mutual Life Insurance Co. v.
Rosenberry, 213 S. W. 242.

OPINION BY STADTFELD, J., October 10, 1932:

This is an appeal by plaintiff from the judgment
entered on a verdict in favor of defendant in an action
on a combined life and disability insurance policy. The
court below refused to enter judgment in favor of
plaintiff non obstante veredicto.

According to the agreed statement of facts the de-
fendant company issued to Meyer Rotchschild, plaintiff

appellant, a policy of insurance bearing date July 1, 1921, and described as "Ordinary life plan with disability benefits and double indemnity benefits" in the face amount of $5,000. The policy provides for the payment to the insured of $50 per month if the insured should become wholly and permanently disabled before the age of sixty.

The policy of insurance lapsed for non-payment of premium due July 1, 1927. On August 8, 1927, appellant made a written application for re-instatement of said policy, which application contained certain questions directed to the insured which appellant answered in said application, the questions and answers being as follows: "1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? Answer: Yes. 2. Within the past 12 months have you had any illnesses or consulted or been treated by any physician or physicians? Answer: No."

Acting upon said application, the company reinstated said policy on or about the 8th day of August, 1927. The said application for reinstatement was never attached to the policy. Said answers of the plaintiff to the questions in said reinstatement application were an inducing and predominating cause as the result of which the defendant was prevailed upon to reinstate the said policy of insurace, and said policy was reinstated by the defendant upon the belief and upon the faith of the correctness of the answers as made by the plaintiff. The annual premium of said policy was paid in 1928.

On September 13, 1928, appellant suffered a stroke of paralysis, rendering him totally and permanently disabled, and after such disability had persisted for a period of three months, appellant filed with the company due proofs of such disability and made claim for disability benefits. This claim the company rejected on the grounds that reinstatement of the said policy

was procured fraudulently in that the answers to the questions propounded in the application for reinstatement were false. Whereupon the appellant brought a suit in assumpsit for the sum of $50, being the amount of one month's disability benefits under the said policy. The defendant duly disavowed liability under the reinstated policy and tendered a return of the premiums, which, being refused, were paid into court.

The company filed an affidavit of defense, pleading the application for reinstatement and offering the falsity of the answers thereunder as a defense to the suit. Appellant moved for judgment on the pleadings for want of a sufficient affidavit of defense, stating that the application for reinstatement was not admissible in evidence, not having been attached to the policy. This motion was refused.

At the trial appellant offered in evidence the pleadings, inclusive of said policy, with proofs of appellant's total disability persisting for more than three months preceding the bringing of said suit and continuously thereafter until trial of the suit. The total and permanent disability before the age of sixty of the appellant for the period stated was conceded at the trial. The appellant rested, and the company in defense introduced the application for reinstatement into evidence over objection of appellant, and followed with oral evidence by the plaintiff and his doctor that the answers to the questions therein were materially false, that the appellant knew they were false when he made said answers, and that said answers were made with fraudulent intent.

The verdict resulted in favor of the company, and appellant filed motion for judgment non obstante veredicto, which was refused. Judgment was rendered for the company. From this judgment appellant took this appeal.

The errors assigned are the refusal of the court to strike from the affidavit of defense the application for

reinstatement and the averments in connection there-
with, on account of not having been attached to the
policy, the refusal to enter judgment for plaintiff non
obstante veredicto, and the entry of judgment on the
verdict in favor of defendant.

The sole question involved in this case is whether
the application for reinstatement, not being attached
to the policy, was admissible in evidence, and whether
it could be used by defendant as a means of establish-
ing a defense to suit on the policy.

Appellant relies upon section 318 of the Insurance
Code of 1921, P. L. 682, which reads as follows: "All
insurance policies, issued by stock or mutual insurance
companies or associations doing business in this state,
in which the application of the insured, the constitu-
tion, by-laws, or other rules of the company from part
of the policy or contract between the parties thereto,
or have any bearing on said contract, shall contain, or
have attached to said policies, correct copies of the
application as signed by the applicant, or the consti-
tution, by-laws, or other rules referred to; and, unless
so attached and accompanying the policy, no such ap-
plication, constitution, or by-laws, or other rules shall
be received in evidence in any controversy between the
parties to, or interested in, the policy, nor shall such
application, constitution, by-laws, or other rules be
considered a part of the policy or contract between
such parties."

The vital question arises as to whether the defend-
ant, by reason of said statute, can take advantage of
the admittedly false and fraudulent statement which
induced the reinstatement of the policy after it had
lapsed for non-payment of premium.

The provision in the policy as to reinstatement is as
follows: "At any time within five years after any
default, upon written application by the insured and
upon presentation at the home office of evidence of
insurability satisfactory to the company, this policy

may be reinstated together with any indebtedness in accordance with the loan provisions of the policy, upon payment of loan interest, and of arrears of premiums with five per cent interest thereon from their due date."

Paragraph k, section 410 of the Pennsylvania Insurance Code of 1921 provides that every life insurance policy shall contain: "A provision that the holder of a policy shall be entitled to have the policy reinstated, at any time within three years from the date of default in premium payments, unless the policy has been duly surrendered or the extension period expired, upon the production of evidence of insurability satisfactory to the company, and the payment of all overdue premiums and any other indebtedness to the company upon said policy, with interest at the rate of not exceeding six per centum per annum."

Under the common law there is no requirement that the application for the insurance shall be made a part of, or attached to, the policy.

While it is true that the policy as executed and delivered constitutes the contract between the insurer and the insured, although a standard form of policy is prescribed by statute, we must look to the act of assembly for the effect to be given to the provision supra, requiring copy of the application to be attached to the policy if to be considered part thereof.

Section 318, which provides for the application for insurance to be attached to the policies issued, does not include in express terms "reinstatement" or "renewal."

In dealing with the subject-matter of reinstatement in paragraph k, section 410, no reference is had to the matter of the application therefor.

The inclusion in the one section, and the omission from the other, by the legislature is important in arriving at the interpretation and application of this legislation. If the legislature intended that the ap-

plication for reinstatement should be attached to the policy, it could easily have so provided. The absence of such provision would tend to indicate that none was intended. To say that it was intended would require us to read into paragraph k the provisions of section 318, referring to original applications only.

Paragraph d of section 410 requires every policy to contain a provision as follows, p. 721: "A provision that the policy shall constitute the entire contract between the parties; but if the company desires to make the application a part of the contract, it may do so, provided a copy of such application shall be endorsed upon or attached to the policy *when issued,* and in such case the policy shall contain a provision that the policy and the application therefor shall constitute the entire contract between the parties." (Italics ours.)

The phrase therein, "when issued," must necessarily refer to the original application, as no application for reinstatement can be in contemplation at that time. In addition, the policy having been delivered at the time of being issued is thereafter under the control and in possession of the insured.

No new policy is issued when a lapsed policy is reinstated. The original policy is not surrendered to the insurance company, but remains throughout in the possession of the insured. It seems clear, therefore, that the only provision in the statute is for the attachment of the application when the policy is issued, and that there is no provision for the attachment of an application for reinstatement. While every construction of a policy should be to give effect to the policy and for the benefit of the insured, no statutory provision should by implication be extended so as to aid in the perpetration of a palpable fraud.

Appellant in support of his contention that the application for reinstatement should be attached to the policy, and not having been attached, is not admissible in evidence, and its contents cannot be used for the ·

purpose of establishing a defense to an action on the policy, relies upon two Pennsylvania cases: Mac-Donald v. Metropolitan Life Insurance Co., 304 Pa. 213, and South Side Trust Co. v. Eureka Life Insurance Co., 74 Pa. Superior Ct. 566.

The first case cited was an action on an accident policy which contained a provision that "This policy may, with the consent of the company and subject to all the terms, conditions and provisions of this policy be periodically *renewed* upon each successive expiration." (Italics ours.)

The policy was allowed to lapse and later a reinstatement was had for six months. The insured was killed within six months after the reinstatement but more than six months after the termination of the first six months while insured was in good standing. The question arose as to whether the reinstatement dated from the first six months or from the date when he was reinstated. The lower court held that it dated from the date of reinstatement. The Supreme Court says, speaking through Mr. Justice WALLING, (pp. 216-217): "We find no reason to differ from this conclusion. While so far as appears there is no similar case in Pennsylvania, the weight of authority elsewhere sustains the conclusion of the trial court. MacDonald paid for the first six months' period and had his protection during that time; then by failing to renew it during that period, or within the thirty-one days of grace, he forfeited all rights under the policy. It was dead in effect, and had given him no protection except during the first six months. With its expiration the company's liability ceased, and again arose only on approval of the receipt for the payment of February 25th. The payment of $9.90 for reinstatement not having been made within the thirty-one days, no insurance was in force until such payment; in fact, not until the receipt was countersigned, as the latter expressly so provides."

In that case, the statutory provision which is in controversy here, requiring a copy of the application to be attached to the policy was in no way involved, and no reference made thereto. The question in the MacDonald case was when the reinstatement of an accident insurance should date from. The lower court, in this case, also called attention to an important difference between accident and life insurance. Quoting from the opinion by DITHRICH, J.: "No advantage accrues to the insured by renewing an accident policy, it only affords protection during the life of the policy, and has no cash surrender value, as has a life insurance policy. There is no reserve forfeited by failure to renew an accident policy. By payment of the same premium a new policy can be taken out. Furthermore, under the terms of the policy in the MacDonald case it was optional with the insurer whether or not to renew or reinstate the policy. In the case at bar it was not optional."

Appellant endeavors to bring the instant case within the facts of the MacDonald case, because the action was on the "disability" provision of the policy. This loses sight of the fact that the policy involved was an "ordinary life plan with disability benefits and double indemnity benefits." The disability cannot be separately reinstated without at the same time reinstating the life feature of the contract. While the present action is for disability benefits only, the judgment in it would be res adjudicata of the insurer's liability for the full face amount of the policy when the insured dies.

In the MacDonald case, it was strictly speaking a "renewal" of the policy in the language of the provision therein contained, rather than a reinstatement. This distinction no doubt was in the mind of Mr. Justice WALLING, when, in that case, he said, p. 217, quoting from Wastun v. Lincoln Nat. Life Ins. Co. of Ft. Wayne, Ind., 12 Fed. (2d) 422; " 'After a policy has

ceased to be in force, because of non-payment of a premium, an agreement for reinstatement of the policy is a new contract.'" As applied to that case, that language was correct. From the following excerpt from the opinion in the Wastun case, it is clear that the real view of the court there was that a reinstatement continues the original policy in force (p. 425): "The statute does not state that the policy shall continue to be the sole contract between the parties. It refers to the policy that is originally issued. After it has ceased to be in force, because of non-payment of the premium, an agreement for a reinstatement of the policy is a new contract. Equitable Life Assur. Co. v. McElroy, 83 F. 631, 639, 28 C. C. A. 365; 37 Corp. Jur. 495. This new agreement is not the issuance of a policy, but a contract for the continuance in force of a former contract. This construction of the statute not only complies with its literal terms but is necessary for the reasonable protection, both of the policy holder and of the company. It enables the company to give to the policy holder, who is unable to make payment in full of his premium, the privilege of making payment at a later period or by installments while the policy is kept alive for his benefit." He, however, predicated the renewal of the policy as being a new contract upon another feature of that policy. Quoting from his opinion, p. 217: "Where, *as here*, it is *optional* with the company whether or not to reinstate an expired policy, the act of so doing constitutes a new contract, and starts a new period of coverage." (Italics ours.)

The relevant provision in the policy in the MacDonald case was as follows: "This policy may, *with the consent* of the company, and subject to all of the terms, conditions and provisions of this policy, be periodically *renewed* upon each successive expiration." (Italics ours.)

The policy of life insurance involved in the case at bar is radically different. It contains an absolute

right of reinstatement conditional upon certain requirements being satisfied. Such a reinstatement provision as is found in the policy now before this court is binding, gives the insured an absolute contractual right to reinstatement upon satisfying the specific conditions, and the company cannot impose any other or further conditions for reinstatement or modify or change any of the terms and provisions of the policy, all of which are continued in full force and effect precisely as before: Davidson v. Old People's Mutual Benefit Society, 39 N. W. 803 (Minn.); Security Life Insurance Co. v. Leeper, 284 S. W. 12 (Ark.); New York Life Insurance Co. v. Adams, 235 S. W. 412 (Ark.); Mutual Life Insurance Co. v. Lovejoy, 83 So. 591 (Ala.); Missouri State Life Insurance Co. v. Hearne, 226 S. W. 789 (Tex.); Goodwin v. Provident Savings Life Assurance Soc., 66 N. W. 157 (Ia.); Prudential Insurance Co. v. Union Trust Co., 105 N. E. 505 (Ind.); Wichman v. Metropolitan Life Insurance Co., 96 S. W. 695 (Mo.).

The insurer cannot be arbitrary or capricious in considering the evidence of insurability submitted under such a reinstatement provision: Thompson v. Postal Life Insurance Co., 226 N. Y. 363; Leonard v. Prudential Insurance Co., 107 N. W. 646 (Wis.).

Another essential difference between the MacDonald case and the case at bar is that in the former, when the policy lapsed it was absolutely at an end. Using the language of appellant in his argument: "When the policy lapsed it was dead. All of the rights of the insured were forfeited and the liability of defendant ceased. There was no contract between the parties and none arose until defendant reinstated the policy, which it was not obligated to do but volunteered to do so."

When the present policy lapsed, it was not dead; the reinstatement provision continued to live for five years. All of the rights of the insured were not for-

feited; he retained his right to have the policy reinstated within five years upon the conditions set forth in the reinstatement provision. All liability of the defendant had not ceased; a distinct liability was imposed upon it by the reinstatement provision. There was still a contractual provision in force between the parties, namely, the reinstatement provision. The defendant was obligated to reinstate the policy, if the appellant had tendered satisfactory evidence of insurability.

Another distinction between the MacDonald case and the case at bar is that the terms of the policy in each case differ as to whether the premiums which accrued during the period of lapse must be paid in order to obtain a renewal or reinstatement. Under the terms of the policy involved in the MacDonald case, the court held that no part of the premium paid by the insured when he renewed the accident insurance could be applied by the company to the period between the expiration of the original insurance and the date of the renewal, or, in other words, that the insured did not need to pay any premium for the period of lapse. The reinstatement provision in the life insurance policy now before the court expressly requires the insured to pay all "arrears of premiums with five per cent interest thereon from their due date." The necessary deduction is that reinstatement in the case at bar was a continuance in force of the original insurance contract, and not the making of a new one.

In the case of South Side Trust Company v. Eureka Life Insurance Co., 74 Pa. Superior Ct. 566, relied upon by the appellant, the only reference to the question now under discussion, which is whether a copy of the reinstatement application should be attached to a policy of life insurance was merely in answer to an argument by the insurance company that the reinstatement resulted in a new contract of insurance. If the insurer's contention in that case that reinstatement results in a new contract were assumed

to be correct, this court, through our Brother KELLER, said that in that event, the insurer was met with the requirement that to a new policy a copy of the application must be attached.

If the reinstatement of a lapsed policy resulted in the issuance of a new policy of insurance, there would be some ground for holding that a copy of the reinstatement application must be attached to the policy. In our opinion, the reinstatement of a policy does not result in the issuance of a policy of insurance or in the making of a new insurance contract, but is simply the revival and restoration of the original policy or contract of insurance upon the conditions prescribed within itself.

While there is no Pennsylvania case directly in point, the weight of authority elsewhere sustains the conclusion reached by the lower court.

New York Life Insurance v. Buchberg, 228 N. W. 770 (Mich. 1930), was a suit in equity brought by the insurer to cancel the reinstatement of a life insurance policy on the ground that it was secured by false representations of the insured as to his health. The case turned upon the precise question now before this court. The Supreme Court of Michigan held that the reinstatement of the policy should be cancelled, and in doing so ruled that it was immaterial that no copy of the reinstatement application had been attached to the policy. The court said (p. 772): "We are satisfied that a proper construction of the Michigan statute does not require a copy of the representations made incident to an application for reinstatement of lapsed insurance to be attached to the policy as a condition precedent to its admissibility in evidence in a subsequent proceeding to secure cancellation of the reinstatement of such policy on the ground of fraudulent representations. If in the judgment of the legislature a copy of the application for reinstatement should be attached to the policy, it can easily so provide by

proper enactment; but this court should not read such a provision into the present statute which is silent on the subject. The statutory provision limiting proof of fraud incident to the original application for insurance to the statements contained in the copy attached to the policy is in derogation of common law, which always permitted the avoidance of a contract procured by means of fraud. Any statutory provision which deprives one of the right to allege and to prove a material fraud, or which places any condition upon a litigant's right to rely upon fraud as a defense, should not be extended by implication beyond the plain meaning of the statutory language."

In the same case the Michigan Supreme Court also said (p. 771): "In almost every instance the policy for such insurance at the time of reinstatement is not in the possession of the insurer, but instead is under the control of the insured. The reinstatement of a policy is not a new contract of insurance, nor is it the issuance of a policy of insurance; but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse: Reidy v. John Hancock Life Ins. Co., 245 Mass. 373, 139 N. E. 538, and Wastun v. Lincoln Natl. Life Ins. Co. (C. C. A.) 12 F. (2d) 422."

New York Life Insurance Co. v. Rosen, 236 N. Y. S. 659 (1929), presented the same identical question to the New York courts. They also held that no copy of a reinstatement application is required to be attached to a policy. This conclusion was affirmed without opinion by the Court of Appeals of New York: 255 N. Y. 567 (1930). The appellate division of the New York Supreme Court in reaching its decision said (p. 661): "It must be borne in mind that the new agreement is not the issuance of a new policy, but a contract for the continuation in force of a former policy." It also said (p. 661): "The right to renew or reinstate

the policy was a part of the original contract—Reed v. Missouri Mut. Assn. (Mo. App.), 5 S. W. (2d) 675—and after the policy was renewed or reinstated it was of the same binding force and effect as though there had never been a breach." The court concluded as follows (pp. 661-662): "The statute (Insurance Law, Sec. 101) with reference to the reinstatement of an insurance policy fully sets forth the requirements for such reinstatement and is silent with reference to attaching a copy of the application to the policy. The section which provides for attaching the original application for insurance to the policy states that, when the policy is issued, such application shall be attached thereto, and that all statements purporting to be made by the insured shall be, in the absence of fraud, deemed representations, and not warranties. It would require a strained construction to hold that a statute which applies solely to the policy when originally issued may also be applied to a policy when reinstated."

The Supreme Judicial Court of Massachusetts reached the same conclusion in Holden v. Metropolitan Life Insurance Co., 74 N. E. 337 (1905). A directed verdict for the defendant was affirmed in that case. After quoting the relevant section of the Massachusetts statute, which read as follows (p. 338): "every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and, unless so attached, the same shall not be considered a part of the policy or received in evidence," the court said (p. 338): "The language of the statute plainly has reference to an application upon which the original policy is issued, and not to any contract of revival."

To the same effect is State Mutual Life Insurance Co. v. Rosenberry, 213 S. W. 242 (1919). Judgment in favor of the plaintiff was reversed in that case and entered for the defendant, the insurance company, by

the court of civil appeals of Texas, and that action was affirmed by the Texas Supreme Court. After stating that the statute could not apply unless the reinstatement is treated as an entirely new and independent contract of insurance, it was said in that case (p. 245): "But we think that the better rule and the one that would come nearer doing justice is to regard the contract for reinstatement, not as a new contract of insurance, but as a waiver of the forfeiture, thus restoring the policy and making it as effective as if no forfeiture had occurred, but reserving the right of the company to avoid the effect of the reinstatement by showing, if it can, that the reinstatement was induced by unfair and fraudulent means: Massachusetts Benefit Life Association v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 274; Goodwin v. Provident, etc., Life Association, 97 Iowa 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411; Monahan v. Fidelity Mutual Life Insurance Co., 242 Ill. 488, 90 N. E. 213, 134 Am. St. Rep. 337; Mutual Life Insurance Co. v. Lovejoy, 78 South. 299, L. R. A. 1918D, 864."

Goodwin v. Provident Savings Life Assurance Soc., 66 N. W. 157 (1896), wherein the Supreme Court of Iowa said (p. 160): "Moreover, the reinstatement was not the making of a new contract, for no new or different terms were agreed upon. It was simply the cancellation of a forfeiture, whereupon the contract was restored, and recognized as binding by the company."

In Reidy v. John Hancock Mutual Life Insurance Co., 139 N. E. 538 (1923), the Supreme Judicial Court of Massachusetts, holding that no recovery could be had on a reinstated policy because of the fraud of the insured in obtaining the reinstatement, said (p. 539): " 'The applications' (for reinstatement) 'were not negotiations for a contract of insurance. The policy had been issued and delivered. It was not a new contract which the insured was negotiating, but the re-

vival of a contract under the conditions prescribed by the company and accepted by him. The revival, if accomplished, could only restore the insured to all his rights under the policy which had not been surrendered, as if he had never been in default.' "

Without quoting further from other jurisdictions, we refer to Mutual Life Insurance Co. v. Lovejoy, 83 So. 591 (1919), Alabama Supreme Court; Lovick v. Providence Life Assn., 14 S. E. 506 (1892), Supreme Court of North Carolina; Reed v. Missouri Mutual Assn., 5 S. W. (2d) 675 (1928), Missouri Supreme Court; Lindsey v. Western Mutual Aid Society, 84 Ia. 734 (1891), Supreme Court of Iowa; Mutual Life Insurance Co. v. Dreeben, 20 Fed. (2) 394 (1927).

All of the cases referred to are in accord with the decisions from which we have quoted.

We do not believe that the arm of the law should be used to extend by implication the provisions of a statute so as to exclude a defense of fraud, and permit a recovery where the fraud is as palpable as in the case at bar.

The assignments of error are overruled and judgment affirmed.