## HARRISON v PHILADELPHIA LIFE INS CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2495.  Decided May 2, 1935

Wilbur E. Benoy, Columbus, and Raymond G. Brown, Columbus, for plaintiff in error.

James Hengst, Columbus, for defendant in error.

## OPINION

By BARNES, J.

The trial court found for the defendant and dismissed plaintiff's petition. Motion for new trial was interposed, overruled and judgment entered dismissing the petition. This is the final order from which error is prosecuted in this court. In the court below, it was the determination of the court that plaintiff had failed to establish a right to reinstatement, it being the view of the court that the defendant's action in refusing to reinstate was a warranted exercise of discretion. It was the view of the trial court that the case of Graveson v Cincinnati Life Insurance Company, 8 C.C., 171, affirmed without report in 56 Oh St 725 was in point and established an Ohio rule for reinstatement under the provisions of an insurance contract.

In the Graveson case, 8 C.C., supra, the following is stated as the condition of the policy for reinstatement:

"It was a condition of the policy that a member whose membership had been forfeited by reason of having failed to pay his assessments, might be restored at any time thereafter by furnishing a new and satis-

factory application and medical examination according to the form of the association, and paying all arrearages."

The statement of the case also contains the following:

"The rules of the association provided for medical examiners and a medical director. It was the duty of the medical director to make all examinations of personal applicants, and to examine all written applications reported by medical examiners, and it was within his discretion to accept or decline any applicant, according to the risk."

Counsel for defendant urge that the Graveson case, supra, is to be distinguished from the instant case in that Graveson was seeking to be restored to membership in an association having a constitution and by-laws and wherein it was expressly provided that the medical director had a discretion to accept or decline any applicant according to the risk. Also that it was a condition of the policy that the forfeited member must furnish a new application. We recognize these distinguishing features and it is necessary to approach the determination of the issue with this in mind.

In support of the finding and judgment the following cases from jurisdictions outside of Ohio are cited:

Conway v Minnesota Mutual Life Ins. Co., 62 Wash., 49. (40 L.R.A. (N.S.) 148).

Smoot v Bankers Life Insurance Co., (Miss.) 120 SW, 719.

Kennedy v Grand Fraternity (Montana), 92 Pac., 971.

Rocky Mountain Savings & Trust Co. v Aetna Life Insurance Company (N. C.) 154 SE, 743.

Equitable Life Assurance Society v Pettit, (Ariz.) 11 Pac. 2nd 833.

Exchange Trust Co. v Capitol Life Insurance Co. of Colorado, (N. D. Okla.) 40 Fed. 2nd, 687.

In most of the cases cited where there was involved the question of reinstatement of policy, the contract contained an express provision for the exercise of discretion, in addition to the phrase "insurability to the satisfaction of the company."

It is a well known rule of construction that every word in a document is presumed to have a purpose. Giving application to this principle under contracts of insurance or memberships in fraternal associations wherein there is the provision for reinstatement in the discretion of some officer of the insurer, upon the insured furnishing satisfactory evidence of the insurability,

there arises the question as to the proper interpretation of a contract containing these two provisions:

(1) "In the discretion of some officer."
(2) "Furnishing evidence of insurability to the satisfaction of the insured."

Is it proper to say that the two expressions are synonymous and that neither would add anything to the other nor does the express provision for discretion enlarge the right of rejection beyond the legal limits of the expression "insurability to the satisfaction."

The application of general principles of interpretation or construction compels us to say that the contract provision providing for the exercise of discretion must be given effect.

In the instant case the clause in the contract of insurance providing for reinstatement contains no express language giving right of discretion. The following is the literal quotation from the contract of insurance.

'This policy may be reinstated on written application subject to evidence of insurability satisfactory to the company and a payment of arrears of premiums with interest therein not exceeding 5% per annum."

It may be urged that the word "satisfactory" extends the power of the insurance company to the limit and that the added words "in the discretion of" can do no more.

If we were dealing with this question as a case of first impression there would be ground for consummate thought and might tax our power to give expression of distinguishment. While the distinction in the two forms of contract in their practical application may be very slight, yet from an examination of the cited cases and an independent investigation, we observe a distinction.

The Legislature of Ohio has enacted laws providing for standard forms of life insurance policies. §9412 GC provides the standard form for ordinary or limited payment policy. All policies issued in Ohio are required to contain the following provisions for reinstatement.

"REINSTATEMENT—In case of continued temporary insurance under the above provisions, this policy, upon evidence of insurability satisfactory to the company, may be reinstated within the first three

years of the term for which the insurance is continued by payment of arrears of premiums with interest at (here insert not more than six) per centum per annum."

**Sec 9420 GC**, provides for policies other than standard forms and the provision of reinstatement is found under Subdivision 10 and reads as follows:

"A provision that if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance, and if such insurance shall be in force and the original policy shall not have been surrendered to the company and cancelled, the policy may be reinstated within three years from such default upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest."

Aside from the Graveson case, 8 C.C., supra, no Ohio authorities have been cited nor do we, through an independent research, find any dealing with the question of reinstatement under the present day standard form of insurance policies. However the identical or analogous question has been considered and determined in numerous courts of last resort in jurisdictions outside of Ohio. There has been cited to us the following cases, all pertinent and helpful in an analysis and determination of this interesting question.

Muckler v Guarantee Funds Life Assn., 50 S. D., 140, 208 NW, 787.

Officer v New York Life Insurance Co., 73 Colo., 495; 216 Pac., 253.

Lane v New York Life Insurance Co., 147 S. C., 333; 145 SE 196.

Thompson v Postal Life Insurance Co., 226 N. Y., 363; 123 NE, 750.

Missouri State Life v Hearn, 226 SW, 789.

Rothchild v New York Life, 162 Atl. 463.

From a composite of the above reported cases, we find the announced principle under identical reinstatement provisions that the words "insurability to the satisfaction of the company" do not vest in the company a discretion of rejecting the application for reinstatement; that there is a substantial contractual right to reinstatement only to be denied by reason of failure to furnish evidence of insurability. It requires the insurance company to act in absolutely good faith and it can not reject arbitrarily or for a mere whimsical ground. In the case of Thompson v. Postal Life Insurance Company, 226 N. Y., 363; 123 NE, 750, Judge Cordoza, with his usual clearness and exactness makes the following observation:

"It is no answer to say that the evidence of his condition was not satisfactory to the insurer, the agreement did not contemplate the exercise of the insurer's taste or fancy or caprice. * * * It could not be unsatisfied with the certificate capriciously. That which the law will say a contracting party ought, in reason to be satisfied with, that the law will say he is satisfied with."

With this understanding of the law, we now come to its application to the facts in the instant case and in so doing we search the record and correlate all pertinent facts bearing on the question of the defendant's rejection of plaintiff's application for reinstatement. There was introduced in evidence as Exhibit "R" on blank furnished by defendant, plaintiff's signed application for reinstatement to which was appended medical examiner's certificate signed by Dr. Thomas. All questions in the application were answered by the plaintiff and all data required under the medical certificate was furnished by the medical examiner. No further information was requested by the insurance company.

The only witness presented by defendant was Mr. Ernest M. Blehl, and according to his testimony he was the actuary for the company and chairman of the Underwriting Committee. It was the duty of the Underwriting Committee, among other things, to pass upon the insurability of applicants for reinstatement. The witness Blehl in his official capacity as actuary and chairman of the Underwriting Committee, participated in the determination of plaintiff's application for reinstatement. On April 9, 1931, plaintiff was advised by letter as follows:

"We have been advised by our Underwriting Committee that your application for the reinstatement of this policy has been declined."

Under date of April 24, 1931, in answer to the letter of Mr. Harrison, this further information was transmitted:

"Our Underwriting Committee has reviewed this matter and we regret to advise that we are unable to reinstate the policy."

Plaintiff Harrison at no time before the bringing of his first action was advised as to specific reasons as to his insurability. The answer of the defendant company in the instant case does not set out the specific grounds upon which its action was based.

In the testimony of the actuary, Mr. Blehl, he says that the application and medical certificate standing alone would probably be sufficient to show insurability.

According to his testimony, the factors taken into consideration in determining insurability, whether upon original application or reinstatement were the following:

1. Build
2. Physical Condition
3. Personal History
4. Family History
5. Finances as affecting insurance hazard
6. Habits
7. Occupation.
8. Moral Hazard
9. Habitat

In addition, the actuary said that the original application was considered and also other information obtainable from their files, including correspondence and also rumors of excessive drinking and wild parties. They claimed to have a history of cancellation of all other insurance aggregating a large sum; that Harrison had been incarcerated in the penitentiary and by reason of financial distress was probably over insured. There was an absence of evidence as to the controlling factors, nor are we advised as to what factors, if any, were eliminated after consideration. Counsel, in their brief, urge that probably the major factor, if not the controlling factor, was physical condition as evidenced by increased weight and blood pressure. As to these factors, the information was given in the application for reinstatement and, as above stated, the actuary witness, Blehl, testified that the application standing alone would probably show insurability. Certainly rumors of excessive drinking and wild parties, unsupported by any evidence, would be an improper factor to be considered and searching the record in its entirety we are unable to determine how much consideration was given to this rumor. That it was considered is apparent from the fact that it is mentioned by the actuary. The correspondence, pleadings and evidence deal in generalities. We are not provided with the specific ground or grounds upon which the company refused plaintiff's application for reinstatement. It is one thing to say that they concluded that he did not present evidence satisfactory of his insurability, but in dealing with the issue as to whether or not defendant acted in good faith, specific reasons warranting a determination of insurability are desirable, particularly in view of the fact that the uncontradicted evidence leads to the conclusion that plaintiff's answers in his application and the medical certificate attached would probably be sufficient to show insurability.

There is no question that under original applications for insurance the parties deal at arms' length and the insurance company may, in its discretion, for any reason or no reason at all, decline to insure the life of any applicant. However, after the policy is issued and containing the form for reinstatement as provided under the statute law of this state. there exists a contractual right and reinstatement can not be denied except as authorized under the policy of insurance.

The words "insurability satisfactory to the company" will not be given the construction that the insurance company may deny the application merely on the ground that they prefer not to continue it. Such a construction would render this provision for reinstatement meaningless and of no value. An insurance company could reinstate even if there was no reinstatement clause in the policy and no statute requiring it. We think that the courts of Ohio should follow the uniform rule declared by courts of last resort in other jurisdictions. In the language of Judge Cordoza:

"That which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with,"

In the light of the law as we find it and determine it and considering the pertinent facts as disclosed from the record can it be said that the defendant company was authorized and warranted in refusing to reinstate the policy of insurance on the application of plaintiff.

We think not and on this factual issue our determination would be against such a finding.

However, on another issue raised through the second amended answer, it is our conclusion that the plaintiff is not entitled to recover. This conclusion is on the basis that plaintiff had no cause of action at the time he filed his petition, and this for the reason that on April 14, 1932, when plaintiff's present action was commenced the policy of insurance was reinstated and thereby plaintiff had not been damaged in any of the respects set forth in his petition. The fact that the defendant on April 9, 1931, wrongfully denied reinstatement and for a period of one year this remained a controverted question does not alter the situation. Had the defendant company's refusal to reinstate been rightful, the plaintiff would have no cause of action of any character. In discussing this branch of the

case, we are assuming that the refusal to reinstate was unauthorized and wrongful.

Under this state of facts, had plaintiff died before defendant's consent to reinstatement, his beneficiary would have been able to recover the entire face value of the policy less loan, accrued interest and premiums. Plaintiff's rights under the policy subsisted from the time of the unwarranted refusal to reinstate by reason of his tender of performance by way of payment of premiums, etc. The company having refused this tender his rights were continuing until such time as the policy was reinstated either through voluntary action of the company or through court action compelling them so to do. The company having consented to reinstatement there no longer existed a controverted question and this was the status when plaintiff commenced the present action. This conclusion is in no way controlled or influenced by reason of the fact that plaintiff commenced a previous action to compel reinstatement. The same principle would apply if such action had not been commenced. The defendant insurance company by waiving interest, extending time of payment, consenting that the trial court in an action then pending, might fix a reasonable time within which subsequent premium payments might be paid and thereafter voluntarily extending the time beyond the premium due dates fixed in the policy, probably was fortifying itself against claimed damages through creating a situation which might require such hasty action as could not be complied with by the plaintiff. It must be understood that according to our conclusion the plaintiff was entitled to have this insurance policy in full force and effect but, of course, there was the obligation upon his part to pay premium when due.

He had made provision and tender for all premiums due when the tender was made and since this tender was refused by the defendant, he would not be required to make tender of subsequent premiums until such time as there was an indication that the company would accept them. However, so long as he was relying upon his tender, it was the obligation upon his part to have it in condition for acceptance. We do not want to be understood to say that plaintiff was not warranted in bringing his first action to compel reinstatement. The courts have judicially determined in favor of this right. The decree of the court does not create the right, but establishes its existence; orders done that which is required under the contract. An insured always has the right to have it judicially determined when a controversy arises so that he may know at an early date whether he has or has not insurance.

It can make no difference as to what motivated the insurance company to agree to reinstate. When it did so agree this controverted question was at an end. This action revived it from the date of the unauthorized refusal to reinstate. There at all times existed the full obligation of the company under the terms of the policy. Of course, the plaintiff to keep the policy alive must pay premiums. If he failed to do this, he probably has lost his rights under the policy. We are aware of the rule providing for damages on breach of contract, but here the situation is substantially different. The thing to be performed by the defendant company was to pay at plaintiff's death the face of the policy less loans and unpaid dividends for current period. On the other side, the obligation of plaintiff was to pay premiums at regular periods for stipulated amounts. The breach of a contract generally does not occur until date of performance. There are some exceptions to this rule, but it will not be helpful to narrate or comment upon them. No doubt it was the theory of plaintiff that the refusal of the defendant to reinstate his policy upon his application and their communications to him to that effect, was in fact a cancellation of the policy. In our judgment this was not the effect of their action and so long as it remained a controverted question, the plaintiff, through making proper tenders of premium, held the policy in full force and effect provided it be shown that the action of the company was wrongful and unauthorized. This was exactly the action that was taken and the company by consenting to a reinstatement then and there did reinstate and the consent thereto of the plaintiff was unnecessary.

In our judgment, it appears from the uncontradicted evidence that under any theory the plaintiff has failed to show any damages.

His claimed basis of damages is the difference between the cost to him at the age of 62 for a $15,000.00 life policy in another standard solvent insurance company and the prescribed yearly premium under his policy in the present company. Under the evidence at the age of 62 his expectancy would be 12.8 years. The amount of difference figures something more than $6000.00. Plaintiff seeks to date his right of action from the 9th day of April, when defendant company advised him that it had refused to reinstate his policy. This necessarily must be predicated upon the theory

that the policy was in fact cancelled cn that date and so recognized by the plaintiff. As heretofore indicated, we think the evidence fails to support this contention. Whatever his rights might have been on the 9th of April, all damages, as now claimed, had been eliminated through the reinstatement of the policy.

At the time of bringing his action there was available to him his original policy upon the stipulated premium payments and therefore we do not think that the claimed basis of damages would apply.

Complaint is made in the brief of counsel for plaintiff in error that the trial court erred in the admission of testimony and considering this testimony in his determination of the cause.

The objection to this evidence is based on the claim that it was an attempt to make it applicable to the second defense of the first amended answer wherein the defendant was seeking to raise the issue of election of remedies. A demurrer was filed and sustained to this defense and counsel is correct that it had no place as an issue in the trial. However, we think the evidence was competent in support of the issue of reinstatement of the policy before the commencement of the present action.

We find no prejudicial error in the trial of this cause and therefore the judgment of the court below will be affirmed.

Costs will be adjudged against plaintiff. Exceptions will be allowed to plaintiff in error.

KUNKLE, PJ, and HORNBECK, J, concur.

## ON MOTION FOR REHEARING

### Decided May 22, 1935

By THE COURT

The above entitled cause is now being determined on plaintiff in error's motion for a rehearing. Accompanying the application and appended thereto is counsel's memoranda of points raised and authorities cited. We have examined the authorities, but find nothing therein leading us to modify our original conclusions. Complaint was made that we failed to discuss the case of Liberty Life Insurance Company v Olive, 180 Ark. 339, 21 SW (2d) 405. We think the reported case is to be distinguished from the instant case in that the offer to reinstate was made after the case for damages was on trial and the court in the opinion mentioned the fact that the offer did not include payment of costs and attorney's fees. In the instant case the controverted question was terminated before the bring-

ing of the action for damages. And there is no element of damages in the case at bar that was not fully met in the offer of reinstatement. It is true that there is no mention of attorney's fees, but that is not specified as an element of damages in the instant case.

The case of Lane v New York Life Insurance Company. 145 SE 196, is also cited in the memoranda for rehearing. This case was cited in the original briefs as one of the leading cases upon which plaintiff in error was relying. We examined it very carefully then and have re-read in connection with this application for rehearing. It seems to us that this case supports a right of equitable action for reinstatement although counsel for Mr. Harrison seems to have the view that the equitable action would not lie. This is upon the theory that Mr. Harrison, being insurable, would have an action at law.

It is our theory that a contract of insurance is property and any unwarranted taking away of the rights under the insurance policy would be a deprivation of property rights without due process of law. This is in line with our original opinion that policyholders have a right to have the question judicially determined as to whether or not their policy of insurance is still active and alive.

A policy of insurance payable in future to the estate or beneficiaries is not terminated merely by the insurance company so stating. No unauthorized or unwarranted act can have such an effect. In order to be terminated there must be present the essential facts provided for in the contract of insurance.

In the instant case there was no controversial question as to the status of this policy at the time plaintiff brought his action for damages. Mere delay in accepting his proper premium payments could not injure or damage him.

The application for rehearing will be overruled.

BARNES, PJ, and HORNBECK, J, concur. BODEY, J, not participating.