The bill is to impress a lien upon the assets of the defunct Burlington City Loan and Trust Company, now in the hands of the commissioner of banking and insurance.
The Neidich Process Company drew its check upon the Burlington City Loan and Trust Company (called Burlington *Page 228 
Bank) to the order of the complainant, George F. Malcolm, Incorporated, of Boston, for $1,327.97. The check was deposited by the complainant in the State Street Trust Company of Boston (called Boston Bank) and forwarded through the usual banking channels to the Federal Reserve Bank of Philadelphia (called Philadelphia Bank) and thence sent by mail to the Burlington Bank, which charged it against the account of the Neidich Process Company, December 28th, 1931. There were ample funds. The next day the Burlington Bank failed to open for business; the commissioner of banking and insurance had taken possession. The Philadelphia Bank wired the news to the Boston Bank and followed it up with a letter stating it was charging the check to the account of the Boston Bank. It also enclosed a form, to be executed and returned, should the Boston Bank desire the Philadelphia Bank to file a claim in its behalf covering the check. The Boston Bank charged the check to the complainant's account and asked whether the check should be returned as dishonored or a claim be filed with the receiver, and upon instructions from the complainant to have the check returned, the Philadelphia Bank was directed to "request the return of this check as dishonored," to which it replied that if the item was to be returned it must have "written instructions to the effect that at a later date you will not request us to have this item reinstated in our claim." And being assured by the Boston Bank that "if you are successful in securing the return of this check, we agree to release all claims and will not request you, at a later date, to reinstate the item in your claim," the Philadelphia Bank, January 5th, 1932, requested the banking commissioner to return the check, advising him that it would deduct the amount from its claim against the estate of the defunct institution. The check was thereupon credited to the Neidich Process Company's account and returned to the Philadelphia Bank, January 13th, 1932, and forwarded to the Boston Bank and thence to the complainant. Later, the complainant sought to have the claim reinstated and the banking commissioner refused. The complainant then presented its claim, under oath, to the banking commissioner as *Page 229 
a preferred claim and, being rejected, the Neidich Process Company paid the complainant the amount of the check, took an assignment of the claim and instituted this suit in the name of the complainant.
The preference is claimed under the "Bank Collection Code."P.L. 1929 p. 644. The pertinent sections are:
"(2) Except as otherwise provided by agreement and except as to subsequent holders of a negotiable instrument payable to bearer or indorser specially or in blank, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be sub-agent of the depositor but shall be authorized to follow the instructions of its immediate forwarding bank and any credit given by any such agent or sub-agent bank therefor shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted. Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."
"(11) Where an item is duly presented by mail to the drawee or payor, whether or not the same has been charged to the account of the maker or drawer thereof, or returned to such maker or drawer, the agent collecting bank so presenting may, at its election, exercised with reasonable diligence, treat such an item as dishonored by non-payment and recourse may be had upon prior parties thereto in any of the following cases:"
"(4) Where the drawee or payor shall retain such item without remitting therefor on the day of receipt or on the day of maturity if payable otherwise than on demand and received by it prior to or on such day of maturity."
"(13)-(2) Except in cases where an item or items is treated as dishonored by non-payment as provided in section 11, when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, *Page 230 
irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."
Exclusion of dishonored items, as provided in section 13, is a modification of the law as it stood when the code was enacted. Prior, if an item were sent to a drawee or payor bank for collection and it was charged to the drawer's worthy account, the money was regarded as segregated, and the bank was deemed to be trustee for the owner of the item; the fund was recoverable in equity, for breach of trust, and if the bank became defunct the insolvency administration took the assets subject to the trust and was accountable for the fund. City of Miami v. FirstNational Bank of St. Petersburg, Florida, 58 Fed. Rep. 2d561.
The banking commissioner's stand is that the complainant's item comes within the exception of section 13 as defined in section 11 of the code. We think not. It would seem that section 11 is purely for the protection of the last forwarding bank, to relieve it of its common law liability for having parted with the item to the payor bank without receiving the proceeds (Federal ReserveBank of Richmond v. Malloy, 264 U.S. 160), as well as to save itself from loss, by revoking the credit given, and recourse to prior endorsers and drawer. The protective aim of the code in this respect is plain enough, but why, in the event of the last forwarding bank treating the item as dishonored, the payor bank as collecting agent of the owner of the item, having collected the money from the drawer and holding it in trust, should be discharged of its trust and the owner's equity and preferential claim nullified, and his right to the fund denied, is difficult to fathom. Banking authorities have no explanation. Whatever the reason, subdivision 2 of section 13 of the code is in derogation of former equities and should be strictly construed, and the trust, as reincorporated in the code, maintained, unless the given case comes precisely within the exception. The instant case does not. The Philadelphia Bank did not treat the check as dishonored. It occupied a dual capacity of creditor and collection agent, and when it found that the Burlington *Page 231 
Bank was closed, as creditor, it charged the item back to the Boston Bank to which it had given credit, it having the right to revoke the credit under section 2 of the code; but as collecting agent it did not disturb the owner's status as cestui to the Burlington Bank and the banking commissioner, trustees, under section 13. Cogent proof of its attitude, that it had not in fact treated the item as dishonored, is to be found in its letter to the Boston Bank, already noted, for instructions to file the claim with the banking commissioner as a preferred claim. Though the forwarding banks, in turn, gave credit for the item, according to the custom of banks, they were in law, nevertheless, simply collection agencies for the owner of the item, and in withdrawing the item a week after the Burlington Bank closed, the Philadelphia Bank acted within that capacity, not under the code in the exercise of its right to elect to treat the item as dishonored, for it had already been paid, but by specific direction of the complainant, through the Boston Bank, the complainant's immediate agent.
We ought not to be confused by the technical terminology of the Boston Bank in the use of the word "dishonored" in its communication to the complainant and with the Philadelphia Bank. The complainant simply responded, requesting that the item be withdrawn, and the Philadelphia Bank, in withdrawing it from the banking commissioner, gave no intimation of dishonor.
When the Burlington Bank as collecting agent of the complainant, collected the item from the account of the Neidich Process Company on December 28th, 1931, a trust arose, and the fund came into the possession of the banking commissioner the next day, bound by the trust. It exists in favor of the complainant, unless the later withdrawal of the item by the complainant was an abrogation or surrender of the trust fund.
There is no dispute that it was not known to the complainant that the item had been collected by the Burlington Bank and that it was holding the fund in trust. The Burlington Bank and the banking commissioner knew it and remained *Page 232 
silent. And in withdrawing the item, in ignorance of the facts, it, of course, cannot be presumed that the complainant intended to waive its right to the trust fund. A relinquishment of rights must be with full knowledge of the facts. "According to the generally accepted definition a waiver is the intentional relinquishment of a known right. It is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." 27 R.C.L. 904. No estoppel can be raised against the complainant because of the withdrawal of the item. The funds in the banking commissioner's hands now are as they were when the trust arose. Creditors cannot complain; their dividends may be lessened, but their rights will not be impaired. The trust fund will not be taken from them; it was never theirs.
The Philadelphia Bank's exaction from the Boston Bank of a promise not to later on request a reinstatement of the claim, is irrelevant to the complainant's pursuit of the trust fund in the hands of the banking commissioner. The arrangement was intersese.
The payment by the Neidich Process Company to the complainant of the amount of the check was in purchase of the complainant's claim to the trust fund, which was thereupon assigned. As assignee, it stands in the shoes of the assignor and has the right to sue in its name. Elsberg v. Honeck, 76 N.J. Law 181;Trust Company of New Jersey v. McGuinness, 104 N.J. Eq. 1.
The complainant is entitled to a decree declaring the trust, and the banking commissioner will be ordered to pay the amount with earned interest. No costs. Peer v. Peer, 11 N.J. Eq. 432. *Page 233