Smith, Appellant, *v.* State Mutual Life Assurance Company of Worcester.

Argued January 27, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Morris Wolf,* with him *Oscar B. Friedman,* for appellant.

*Geoffrey S. Smith,* of *Dechert, Bok, Smith & Clark,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 23, 1936:

On November 28, 1928, defendant issued its policy of insurance for $5,000 on the life of Harry F. Smith. His wife, Jane T. Smith, the appellant, was named beneficiary. The policy contained a standard incontestability clause, and a provision for reinstatement, reading: "This policy may be reinstated at any time after default in premium payment, provided it has not been surrendered for its cash value, or its extension period expired, upon the production of evidence, satisfactory to the Company, of the insurability of the person whose life was insured and the payment of all over-due premiums and the payment or re-instatement of any other indebtedness to the Company under this policy with simple interest at the rate of six per centum per annum." The policy lapsed for nonpayment of premium due March 28, 1933. On May 16, 1933, the insured applied for reinstatement, tendered the overdue premiums and interest, and the application was accepted.

On April 28, 1934, the insured suffered total and permanent disability, of which the company had notice. Under the terms of the policy, the payment of all premiums becoming due after the commencement of such disability, is waived. On September 6, 1934, the company notified the insured that his application for disability had been rejected because he had represented himself to be in sound health on May 16, 1933, (the date of the reinstatement application), whereas the cause of his disability antedated the application for reinstatement and that had the company been aware of these facts, the policy would not have been reinstated.

On April 13, 1935, the insured died. Proofs of his death were duly filed. Payment to the beneficiary was refused on the ground that the deceased, in his application for reinstatement, had made false representations

as to the condition of his health. The issue came before the court below upon a rule for judgment for want of a sufficient affidavit of defense. The court decided this issue in favor of the insurance company, holding that the defense of fraud was available.

With this conclusion we cannot agree. Plaintiff's suit is based upon a contract of insurance and not upon any contract for reinstatement, and the insurance contract expressly provides that a claim founded upon it cannot be contested "after it has been in force during the lifetime of the insured for one full year from the date of its issue," excepting for nonpayment of premium.

Defendant makes the ingenious argument that there are in this case two contracts, one the insurance contract, and the other, the contract of reinstatement, and that the company is not contesting the contract of insurance but is contesting the reinstatement contract. The answer to this is that while there were two contracts between the parties, the contract of insurance completely superseded the contract of reinstatement, just as a contract of marriage supersedes a contract of betrothal. The "two-contract" argument applies with equal force to the situation when the insurance is *first* applied for and granted and the policy issued. What actually then takes place is this: A applies to B company for insurance and in his application makes certain representations as to his health. B is satisfied with the correctness of these representations and agrees to enter into a contract of insurance with A. A contract of insurance is then drawn up which is mutually satisfactory to both parties and mutually acceded to. The relationship of insured and insurer then comes into existence. The policy is issued with the standard incontestability clause. This means in practical effect that the insurance company has one year in which to ascertain whether or not the insured has made any false representations in his application. If it discovers that the insured has done so, it can have the policy rescinded on the ground of fraud,

but if it does not make and act upon any such discovery within one year, the company is estopped by its own express waiver from setting up fraud as a ground of defense in an action based on the policy. The company might argue (with the same logic it uses here) that since there was fraud in the application it was *not contesting the insurance policy* but was *contesting the agreement to insure*. Such a contention would, of course, have to be rejected; otherwise the incontestability clause would be a mere verbal formula without legal substance.

Since the "two-contract" defense theory cannot be invoked in suits on policies which have never lapsed, it cannot be invoked in suits on lapsed but reinstated policies, for there is a perfect relation of likeness, in contractual aspects, between what takes place when a contract of insurance is entered into and what takes place when a lapsed policy is reinstated by mutual agreement. Originally A applied to B for insurance and B accepted the application. Later or simultaneously with the acceptance of the application, a contract of insurance is entered into. Later the policy lapses. A applies for reinstatement. The application is accepted. Simultaneously with the acceptance, the original policy, which as an *insurance* policy had become legally dead by lapsing, has breathed into it again the breath of legal life, and it becomes the measure of the respective mutual rights and obligations of the parties in respect to its subject-matter. Then when beneficiaries begin suit upon it, as in the instant case, the plea of fraud in the procurement of the policy's reinstatement cannot be availed of by defendant when, as here, the incontestability clause has become operative.

The learned court below cites some opinions from other jurisdictions in support of its decision. We think the opinion writers in those cases overlooked the fact that the claims being adjudicated before them were not founded upon agreements for reinstatement of policies of insurance but upon the *contracts of insurance them-*

*selves,* which policies contained stipulations completely barring fraud as a defense, after the policies had been in effect two years.

This court in *Brady v. Prudential Ins. Co.,* 168 Pa. 645, 649, 32 A. 64, which was a suit upon a contract containing a clause making the policy incontestable after three years, said: "If the representations as to age, state of health, or general physical condition, on which the policy was issued, turn out to be untrue, the right of his [the insured's] representative to recover may be contested for that reason and the company may deny its liability under a policy so obtained. The twelfth clause puts a limit upon the time when such objections may be made. If the insured lives for three years and pays all moneys due from him in the meantime, then the statements made in the application are taken to be true. They are no longer contestable. The policy is to be held to be a good and valid contract binding upon the company according to its terms. In case of death happening after three years, the policy, if suit be brought upon it, is not to be defeated by inquiry into representations on which it was based, but the company must be held to performance." Applying the reasoning of that opinion to the instant case, we have a suit brought upon a duly existing contract of insurance. This suit "cannot be defeated by inquiry into representations on which it was based, but the company must be held to performance." When the contract of insurance in the case before us lapsed for nonpayment of premium, it *as a contract of insurance* was nonexistent. When it was reinstated after the application for reinstatement had been accepted, there was a rebirth of the insurance contract. It is true that the evidence of the new contract was the same thing as the evidence of the old contract, to wit, the same identical document with an endorsement of the fact of reinstatement. When the policy of insurance lapsed, all that was, in legal contemplation, left of the contract between the parties was the right of the former insured

therein to have the policy of insurance reinstated upon his satisfactory compliance with certain express conditions. It became a contract of insurance again only after it had been formally reinstated by the insurance company's due acceptance of the insured's application for reinstatement. When reinstated, it was reinstated *in its entirety.* The incontestability clause, like all others, was returned to full force and vigor, and after the expiration of one year it became a shield protecting the beneficiary-claimant against the company's contesting the claim on any ground other than nonpayment of premium.

While the precise question herein decided by us has not heretofore been before the appellate courts of this Commonwealth, our theory as to the legal status of a restored policy which had lapsed is consistent with the view expressed by Mr. Chief Justice PAXSON, speaking for this court, in the case of *Lantz v. Insurance Co.,* 139 Pa. 546, 560, 21 A. 80, as follows: "The consequence of a default in the payment of the premium is defined in the policy itself. It declares that, if not paid on the days named and in the lifetime of the insured, the policy should 'cease and determine.' By this I understand that it is suspended; it ceases to bind the company and to protect the assured, and this without any act or declaration on the part of the former. It does not require a formal forfeiture. This term is often used, and, I think, inaccurately, in such cases. Nor, is the policy void in the general sense of that term. It is voidable at the election of the company, and that election can be exercised without notice to the assured, for the reason that the policy itself is notice that his rights cease with the nonpayment of the premium. As to him it is a dead policy. *It is true it may be restored to life, by the subsequent payment of the premium and its acceptance by the company. This, however, is a new contract* [italics supplied] by which the company agrees in consideration of the premium to continue in force a policy which had

previously expired; in other words, it is a new assurance, though under the former policy: *Want v. Blunt,* 12 East. 183."

The above case was cited with approval in *Pacific Mutual Life Ins. Co. v. Galbraith,* 91 S. W. 204. In that case there was a two-year incontestability period, a lapse of the policy for nonpayment of premium, reinstatement fraudulently procured, and death thirteen months after reinstatement. The Supreme Court of Tennessee held, reversing the court below, that in a suit on a reinstated policy the two-year period at the end of which the policy became incontestable began at the date of reinstatement and not at the date of the policy. "Upon reinstatement," said the court, "a new contract is made" and "this repels the conclusion that the period of incontestability begins with the date of the old contract." See also *Illinois Bankers' Life Assn. v. Hamilton,* 188 Ark. 887, 67 S. W. 741, 94 A. L. R. 1194.

Cases from a few foreign jurisdictions are cited by appellee in support of its position. Some of these are easily distinguishable from the instant case. As to the others, we find their rationale unacceptable.

Since the defendant did not raise any question as to the validity of the reinstated policy until more than one year after reinstatement, it is not necessary to decide whether "one full year from the date of its issue," as used in the incontestability clause, is computed from the date of the original issue of the policy or from the date of reinstatement. According to either interpretation the defendant is, under our view of this case, barred by its own express agreement from the defense of fraud. In *McCormack v. Security Mutual Life Ins. Co.,* 220 N. Y. 447, 116 N. E. 74, in which the Court of Appeals of New York reversed a judgment of the Appellate Division and affirmed the judgment of the Trial Term on grounds not relevant to the issue here, Judge CARDOZO, speaking for the court, said at page 78: "There is authority for the proposition that a reinstated policy is to

be viewed as a new contract, and that it is incontestable for fraud or breach of warranty in the application for reinstatement after it has been in force as reinstated for a year." (Citing cases.)

In *Teeter v. United Life Ins. Assn.*, 159 N. Y. 411, 54 N. E. 72, in which there was a two-year incontestable period, lapse for failure to pay assessment in time, reinstatement fraudulently obtained, and death more than four years after the reinstatement, Chief Judge PARKER, speaking for the court, said: "We are thus brought to a consideration of the claim of the plaintiff that the two-years' limitation provided for by the contract commenced to run upon the reinstatement of the policy, and hence that, for a period of more than two years prior to the death of Teeter, it constituted a bar to any defense based on the ground that the statements in the reinstatement certificate signed by Teeter were false. Had the original application contained any false statements, the defendant would have been prevented by the terms of its contract from setting up their falsity as a defense to this action: *Wright v. Assn.*, 118 N. Y. 237, 23 N. E. 186. And it seems to us, after an examination of the contract, that the defendant had two years after the reinstatement within which to investigate the condition of Teeter's health at the time of the making of the reinstatement certificate, and that after that time the policy became again indisputable. . . . The *policy of insurance was restored in full vigor as of that date,* and by its very terms it was to become incontestable after two years." [Italics supplied.]

Under the conclusion we have reached as to the legal effect of the reinstatement of a lapsed insurance policy, the view expressed by the Court of Appeals of New York, that in the case of a reinstated policy the limitation term stipulated in the incontestability clause begins to run from the date of reinstatement, appears to be reasonable. The insuring company has no cause to complain of a decision that under a *reinstated* policy it has the same pe-

riod of time within which to determine whether the reinstatement was procured by fraud as it had under the original policy to determine if *it* was procured by fraud.

The order of the court below is reversed with a procedendo.