Barag, Admr., *v.* Metropolitan Life Insurance Company, Appellant.

Argued October 8, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Carroll Wetzel,* with him *Dechert, Smith & Clark* and *Harry Cole Bates,* for appellant.

*Albert L. Moise,* with him *M. Mayer Cohen,* for appellee.

OPINION BY RHODES, J., January 27, 1938:

This is an action of assumpsit brought by Philip Barag, administrator of the estate of the insured, Philip Barg, against defendant insurance company. On April 24, 1933, defendant issued to Philip Barg a policy of life insurance in the amount of $500. The policy was the type commonly known as "industrial," and required the payment of weekly premiums of $1 on or before Monday of each week. The last regular payment of premium was made December 4, 1933, and thereafter none was paid for a period of fourteen weeks. On March 14 or 19, 1934, plaintiff, for and on behalf of insured, paid $15, which represented all past due premiums and the premium for the week from March 19th to March 26th. The receipt for this payment was endorsed in a premium receipt book furnished to plaintiff by defendant. Defendant in its affidavit of defense averred that this payment was "provisionally deposited." The insured died March 25, 1934. Payment of the face amount of the policy having been refused by defendant, this action was brought. The trial judge, sitting without a jury, found for plaintiff for the face amount of the policy, with interest from the

date of insured's death. Defendant's motions for a new trial and for judgment n. o. v. were overruled by the court below, and judgment was entered on the finding for plaintiff, from which defendant has appealed to this court.

Appellant presents the argument that the dismissal of its motion for judgment n. o. v. was error because (a) the policy had lapsed, and (b) had not been revived at the time of insured's death.

With respect to the payment of premiums and revival after lapse the policy provided:

"If any premium under this Policy shall not be paid when due, the Policy shall lapse, subject to the provision for Grace Period and to the Non-Forfeiture Privileges as herein contained, and such lapse shall not be considered to have been waived by the Company in any respect by reason of the acceptance of overdue premiums upon this or any other Policy. ......

"Revival. Should this Policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the Company of the sound health of the Insured. ......

"This Policy constitutes the entire agreement between the Company and the Insured and the holder and owner hereof. Its terms cannot be changed, or its conditions varied, except by the express agreement of the Company evidenced by the signature of its President or Secretary. Therefore, Agents (which term includes also Managers and Assistant Managers) are not authorized and have no power to make, alter, or discharge contracts, to waive forfeitures or to receive premiums on Policies more than four weeks in arrears, or to receipt for the same, and the payment to an Agent of any such arrears shall be at the sole risk of the person making such payment and shall not be credited as a payment upon the Policy, whether receipt be given for such payment or not."

Plaintiff testified that he had procured the policy of insurance on the life of the insured, his uncle; that until December, 1933, he had paid the premiums on the policy in question to appellant's agent who called therefor every week at plaintiff's place of employment; and that he stopped paying only because the agent ceased to call. He further testified that he had endeavored to get in touch with the agent, and, on two occasions, had made telephone calls to his home, but never was able to contact him.

Plaintiff takes the position that the policy had never lapsed for nonpayment of premiums, and contends that appellant failed to send an agent to collect the weekly premiums; that insured, or plaintiff on his behalf, was ready, able, and willing to pay the weekly premiums at all times after the policy was issued; and that the only reason this was not done was because an agent of appellant failed to call to collect said weekly premiums. It is admitted that no payment of premium was made for fourteen weeks. The policy itself provides that it shall lapse if any premium shall not be paid when due, subject to the provision for grace period and to the non-forfeiture privileges contained therein. We find nothing in the portions of the policy printed in the record to indicate where the premiums were to be paid. The weekly premium receipt book had endorsed thereon: "Keep This Book in Good Order Always Have It Ready for the Agent." The question might properly be raised whether the policy had lapsed under these circumstances. See *Cochran v. National Casualty Co.*, 261 Mich. 273, 246 N.W. 87; *Adams v. Washington Fidelity National Insurance Co.*, 48 Ga. App. 753, 173 S.E. 247; *Carey v. John Hancock Mutual Life Ins. Co.*, 100 N.Y.S. 289, 114 App. Div. 769. However, the court below, in its opinion dismissing appellant's motions for a new trial and for judgment in its favor notwithstanding the finding, properly concluded that the evidence was sufficient to support a finding that appellant had waived the

presentation of evidence of the sound health of the insured, and that the policy was revived. It is therefore upon this basis that we affirm the judgment.

Concerning what occurred on March 14 or 19, 1934, when plaintiff paid $15, which was sufficient to liquidate the arrearages and to pay premium to March 26th in advance, we quote from plaintiff's testimony which was admitted without objection:

"Q. Two men came and said they were agents of the company? A. Yes. Q. Did they tell you where they came from? A. Yes. One comes from New York, the manager, and one is from Sixty-ninth Street, the manager. Q. One from Sixty-ninth Street, Philadelphia? A. Philadelphia. Q. And the other was from the home office in New York? A. Yes. ...... Q. After you paid these two men the $15 carrying the premiums up to the 26th of the month ...... did you have any other conversation with them? A. Yes, I had. Q. Say what they said, and say what you said. A. Well, when they— when I had the $15 and they walked in in the place, they asked me, 'How is your uncle?' and I said, 'He's all right.' 'Where is he?' I said, 'He has been working on 4th Street, and he sells shoes,' and he said, 'That's all right,' and I said, 'Well, if you want to, you could go there and see him, you could go and see him how he is,' and he said, 'Well, that is not necessary. As long as you pay your premiums it is O.K. and your policy is back the same thing the way it was.' Q. Did they ask you whether he was well or sick or anything like that? A. Yes. They did ask me, and I told him he is well and he is working, he is working every day in the week except Saturday and Sunday. Saturday and Sunday he was not working. ...... Q. What if anything did they say? A. Well, they say, 'That's all right. That is not necessary, that is not necessary to go and see him.' ...... Q. Tell us the whole conversation. Tell what those men said to you after they talked to you about the man's health. A. Well, they come and

asked me for the money, so I give them the $15, and they asked me, 'How is his health?' and I said, 'He's all right.' 'Where is he?' and I said, 'He has been working Fourth and Carpenter Streets on a stand, and if you want to go and see him, you could go there and see him,' so they told me they don't have to see him, 'as long as you give us the $15,' so I gave the $15 and they marked it down, and they changed the book, and they took that book away, and give me a new book."

The premium receipt book, furnished to plaintiff by these representatives of appellant, shows an unconditional receipt for $15 signed by William J. Pyott, and is similar to previous receipts for premiums on the policy in question. Pyott was in court, but was not called by either plaintiff or appellant. Gustave Schultz, assistant manager of appellant's office at 6910 Market Street, Upper Darby, testified that he offered, at the direction of and on behalf of appellant, to return to plaintiff the sum of $15, representing the renewal premiums, in July, 1934, and again in March, 1935. The alleged offers were made to plaintiff's attorney. This witness, called on behalf of appellant, testified, concerning the revival of an "industrial" as distinguished from a "straight" policy, as follows: "By the Court: Q. Is there a distinction between a revival of an industrial policy of insurance and a straight policy? A. Yes. Q. What is the distinction? A. On an ordinary contract we require the insured's signature. Q. And the physician's statement; is that right? A. No, not necessarily. That is optional as far as the company is concerned. Q. And the industrial? A. On the industrial the agent collects the money, and he sends in a revival form with no signature. That is acted—that is sent to the Home Office, and they have the permission of approving or disapproving that revival. Q. That is to say, if an agent of the company visits the insured, and in their opinion—in the opinion of the agent the insured is in sound health, as he thinks, that policy is revived; is that right? A. He is sup-

posed—not exactly revived, no. It wouldn't be revived unless it is approved at the Home Office. Q. Yes, if it is approved; but when they say 'satisfactory to the company,' if the agent says, 'I am satisfied that so-and-so is all right, is in sound health,' what happens? That policy is revived, isn't it? A. Automatically. Then, of course, it takes a period of time, two weeks after that, but the insured is not—the insured is not insured until it is officially revived by the Home Office."

There is no conflict in the evidence as to the material facts. Assuming that the policy lapsed for the non-payment of premiums, it could be revived under the terms of the policy upon the payment of all arrears, and the presentation of evidence satisfactory to appellant of the sound health of the insured. The payment of the premiums in arrears and in advance for the week ending March 26, 1934, was made to and accepted by appellant. No written application or physical examination was required by insured for revival of the policy, nor was a written endorsement of revival on the policy necessary. In fact, no further action on the part of the insured appears to have been required by the terms of the policy as a matter of law. Appellant having made no request, it was not necessary for insured to proceed to produce evidence of his sound health. Appellant could have requested additional evidence as to the soundness of insured's health at the time of the payment of premiums if it was unwilling to revive the policy on the evidence which it had as to the health of the insured when the policy had been issued originally (see *Malchinsky v. Mutual Life Insurance Company of New York*, 90 Pa. Superior Ct. 1, 12), or which it may have subsequently acquired through its own agents (see *McGine v. Industrial Health, Accident and Life Insurance Co.*, 124 Pa. Superior Ct. 602, 605, 606, 189 A. 889). Having taken no action between the date of the payment of the premiums to it and the date of the death of the insured, whether there was an implied waiver by appellant of this

provision of the policy and the consequential revival before insured's death was a question of fact for the trial judge sitting as a jury. Although appellant in its affidavit of defense averred that the payment of premiums in question was provisionally deposited, there is no evidence to such effect. On the contrary, the premiums were paid and accepted unconditionally, and appellant requested no evidence as to the soundness of insured's health. It could not be held as a matter of law that the period given appellant to act, between the receipt of the premiums and the death of insured, was unreasonably short. Whether the policy had been revived was, under all the circumstances, a question of fact. The evidence was sufficient from which the trial judge, sitting as a jury, could legitimately conclude that the policy had been revived or reinstated by appellant. See *White v. Metropolitan Life Insurance Co.*, 22 Pa. Superior Ct. 501; *Malchinsky v. Mutual Life Insurance Company of New York*, supra; *Gross v. Home Life Ins. Company of America*, 112 Pa. Superior Ct. 96, 170 A. 432; *Lang v. Bowen et al.*, 125 Pa. Superior Ct. 226, 189 A. 743; *Mc-Gine v. Industrial Health, Accident and Life Insurance Co.*, supra.

Appellant's second position is that its motion for a new trial should have been granted as the court below erred in refusing to permit it to show the existence of a prior policy which had not been endorsed on the policy in suit in compliance with its terms.

The policy in suit provided, inter alia, as follows: "If, ...... (3) any Policy on the life of the Insured hereunder has been previously issued by this Company and is in force at the date hereof, unless the number of such prior Policy has been endorsed by the Company in the 'Space for Endorsements' on page 4 hereof, (it being expressly agreed that the Company shall not, in the absence of such endorsement, be assumed or held to know or to have known of the existence of such prior Policy,

and that the issuance of this Policy shall not be deemed a waiver of such last mentioned condition), then, in any such case, the Company may declare this Policy void and the Liability of the Company in the case of any such declaration or in the case of any claim under this Policy, shall be limited to the return of premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company."

Appellant called as a witness one of its agents, who testified that he had written a policy of insurance, which he identified, on the life of the insured, *Philip Barg,* on November 9, 1932; that the number of the policy was 7984481-A; and that he made the collections for the premiums from insured's daughter, Mrs. Trupin. Mrs. Trupin, witness for appellant, testified that she was the daughter of Mr. Barg; that a policy of insurance had been written on his life; that it was written through the previous witness, an agent for the appellant. Counsel for appellant then made the following offer: "Mr. Rhoads: Any questions, Mr. Moise? Mr. Moise: No. Mr. Rhoads: Your Honor please, I want to offer in evidence Defendant's Exhibit No. 5, the policy of the Metropolitan Life Insurance Company No. 7984481A. Mr. Moise: I will object to it. The Court: Objection sustained. Mr. Rhoads: Will your Honor grant me an exception? The Court: Exception." Appellant made no further offer of proof in connection with this previous policy, which insured *Philip Barack.* On the state of the record, its admission was properly refused. There was no testimony or offer of proof which would have warranted its admission in evidence at the time. The materiality of a prior policy was contingent upon the existence of two facts: (1) That it was a policy on the life of the insured under the policy in suit previously issued by appellant, and (2) in force at the date of the issuance of the policy in suit. Appellant neither proved nor offered to prove that the policy offered in evidence

was in force when the policy in suit was written. This was a prerequisite to the admissibility of the policy offered, in the absence of which its rejection was proper. The case of *Taylor, Adm'x, v. Home Life Insurance Company of America,* 125 Pa. Superior Ct. 529, 189 A. 722, upon which appellant relies, is not in point. Although not stated expressly in the opinion, examination of the record in that case (23a-26a) reveals that counsel for plaintiff admitted at the trial that defendant had issued two policies of insurance on the life of the "assured" previous to the policy in suit, and that said policies were in force when the policy in suit was written.

Assignments of error are overruled. Judgment is affirmed.