## HOGAN v. JOHN HANCOCK MUT. LIFE INS. CO.

### No. 10468.

United States Court of Appeals
Third Circuit.

Argued Oct. 18, 1951.

Decided April 11, 1952.

Edwin J. McDermott, Philadelphia, Pa. (William Charles Brown, Philadelphia, Pa., on the brief), for appellant.

William H. Peace, 2d, Philadelphia, Pa. (Ira Jewell Williams and White, Williams & Scott, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Where a policy of life insurance provides that it may be reinstated after lapse "upon production of evidence of insurability satisfactory to the Company", may the insurer subsequently require that (1) the insured be in sound health on the date of approval of the reinstatement application and (2) that he had not been treated by a physician in the interval between the signing of the application and its approval?

This question is presented by the instant appeal from the judgment of the court below granting appellee's motion to dismiss [1] and its order denying the appellant's motion for a new trial. The facts giving rise to the appeal are as follows:

On June 6, 1945, the John Hancock Mutual Life Insurance Company ("Company") issued a policy in the amount of ten thousand dollars insuring the life of one William J. Savage, and naming as beneficiary Charles J. Hogan, appellant herein, who was a business partner of the insured. This policy was countersigned by an official of the Company at its home office in Boston, and delivered to the insured in Philadelphia. At the same time an identical policy was issued on the life of the appellant naming Savage as beneficiary. The first quarterly premium on each policy was paid at the time of issuance. The second quarterly premium, due on September 6, 1945, was not paid, and both policies lapsed according to their terms on October 7, 1945. Subsequently, either during the last week in October or the first week in November, Herold and Lull, two of the Company's agents called upon the appellant at his office for the purpose of inducing the two partners to reinstate their respective policies. At the time, Savage was not in the office but was attending to some outside work pertaining to the partnership. Herold and Lull persuaded the appellant to sign a reinstatement application, and left with him a similar application which they instructed him to have Savage sign and return to the Company's Germantown (Philadelphia) office. Shortly thereafter, one Spearing, an employee of the partnership, secured Savage's signature on the second application and delivered it to the Germantown office.

The application signed by Savage contained a printed declaration that the insured

"is now in sound health, and that during the time, including the grace period, since the first premium now in default became due, has had no injury, ailment, illness or disease, or symptoms of such, and has not consulted or been treated by a physician or any other practitioner, except as otherwise hereinafter stated."

Under this declaration, in the space provided, the written word "none" appeared; and under that was the printed statement "All exceptions have been stated." The application also provided that:

" A. No reinstatement of said policy shall be effective if any of the foregoing declarations are untrue or incomplete * * * nor until the application, duly executed * * * is approved by the Company at its Home Office in Boston, nor if the person named as insured in said policy has, since the date of this application, consulted or been treated by a physician

---

1. The motion to dismiss was made and granted at the close of all the evidence.

or other practitioner, nor unless such person is alive and in sound health on the date of such approval * * * by the Company at its said Home Office, which shall be the effective date of reinstatement. * * *"

The application form was received by the Company at its home office on December 17, and was approved on December 21, 1945. On November 3, 1945, Savage consulted his personal physician, and on his advice entered the Jefferson Hospital, Philadelphia, where he remained for ten days, and where it was determined that he was suffering from tuberculosis. The parties are in dispute as to whether this occurred before or after he signed the reinstatement application—the application was dated November 4, but appellant claims that it was actually signed on October 26.[2] It is undisputed, however, that prior to December 21 (the date of final approval of the application) Savage was on several occasions treated by physicians, both at the Jefferson Hospital and at the Barton Memorial Hospital, Philadelphia. On January 7, 1946, the Barton Memorial Hospital reported to the Pennsylvania Department of Health that Savage had tuberculosis. Thereafter he spent a good part of the remainder of his life in sanatoriums, and he finally succumbed to the disease on March 5, 1947.

When payment of the principal amount of the policy was refused,[3] appellant brought suit in the District Court for the Eastern District of Pennsylvania, which assumed jurisdiction because of the diverse citizenship of the parties. The Company's answer set up the form of the reinstatement application and denied liability, alleging in substance that reinstatement had never become effective because: (a) the insured's declaration in the application that he had not consulted a physician since the policy lapsed was false; (b) the insured had been treated by physicians between the signing of the application and its approval by the Company; and (c) the insured was not in sound health on the date of approval.

The cause was originally tried to a jury, but at the close of all the evidence the trial judge granted the Company's motion to dismiss, charging the jury that whether or not Savage had consulted a physician prior to signing the reinstatement application, the appellant could not recover "if at any time (Savage) consulted a physician or was not in sound health before December 21, 1945, when the policy was approved. * * *" Appellant's motion for a new trial was denied, and this appeal followed.

It is the appellant's contention that the policy was irrevocably reinstated in that the insured had complied with the reinstatement provision in the original policy; that the provisions in the reinstatement application that reinstatement would not be effective if the insured should consult a physician prior to, or if he were not in sound health on, the date of final approval were void as repugnant to the policy; and hence that the trial judge erred in taking the case from the jury. We cannot subscribe to this contention.

■ The insured was a resident of Philadelphia and the policy, though countersigned at Boston, was delivered to him at Philadelphia. Therefore, the law of Pennsylvania applies. Both parties are in agreement as to this. Bush v. Prudential Ins. Co. of America, 3 Cir., 1945, 150 F.2d 631; Pierkowskie v. New York Life Ins. Co., 3 Cir., 1944, 147 F.2d 928. See also I Goldin, The Law of Insurance in Pennsylvania, 135 (2d ed. Phila.1946).

■ It is true that under the Pennsylvania decisions, where a policy of life insurance provides, as here, that reinstate-

2. The records of the Company's Germantown office disclose the payment of two quarterly premiums on the Savage policy on November 29. Appellant asserts that he paid the premiums on both policies on October 25, when, he says, Lull and Herold visited him at his office. It is unnecessary to resolve this factual issue under our view of the case.

3. Pursuant to court order, the Company paid to the Prothonotary of the Court of Common Pleas of Philadelphia County the sum of $487.20, being the total amount of premiums paid on the policy between reinstatement and the death of the insured.

ment is to be effective upon payment of all arrears and the production of evidence of insurability satisfactory to the insurer[4] "the company cannot impose any other or further conditions for reinstatement or modify or change any of the terms and provisions of the policy, all of which are continued in full force and effect precisely as before." Rothschild v. New York Life Ins. Co., 1932, 106 Pa. Super. 554, 565, 162 A. 463; Datesman v. Federal Life Ins. Co., 1939, 35 Pa. Dist. & Co. R. 251. However, the provisions of the reinstatement application of which the appellant complains do not in any way contravene the reinstatement provision in the policy itself; but rather, they represent a spelling-out by the insurer of what it will require as "evidence of insurability satisfactory to the Company".

A reinstatement provision in a policy of life insurance contemplates the making of a new contract between the parties, which the insurer is not obligated to do unless satisfied that the original risk is still insurable. Smith v. State Mutual Life Assurance Company of Worcester, 1936, 321 Pa. 17, 184 A. 45; Riebel v. Prudential Ins. Co. of America, 1935, 319 Pa. 24, 179 A. 447.[5] Upon receipt of a reinstatement application, the insurer has the right to require further evidence of insurability, so long as it acts reasonably in so doing, or it may agree to reinstate upon the basis of the information in the application itself. Barag v. Metropolitan Life Ins. Co., 1938, 130 Pa. Super. 213, 196 A. 558; Rothschild v. New York Life Ins. Co., supra 106 Pa. Super. at page 565, 162 A. 463. In either event, reinstatement is never effectuated until the insurer acts on the application. Thus, where the insured dies after making the application, and the insurer approves in ignorance of this fact, such approval cannot "operate to revive the policy on a life which (has) ceased to exist. No such thing could have been contemplated by either the company or the insured." Meerbach v. Metropolitan Life Ins. Co., 1911, 46 Pa. Super. 133, 135. Likewise, where reinstatement is conditioned upon the truth of the statements in the application, approval by the insurer does not revive the policy unless the facts are exactly as alleged, regardless of the good faith of the insured, for such was not within the contemplation of the parties. McInerney v. Metropolitan Life Ins. Co., 1943, 152 Pa. Super. 636, 33 A.2d 259; Mullen v. John Hancock Mutual Life Ins. Co., 1942, 150 Pa. Super. 323, 28 A.2d 456.

Applying these principles to the facts of the instant case, it is manifest that, in conditioning its approval upon the continued good health of the insured up until the date of approval, the Company was merely requiring the continued existence of the asserted facts upon which it was acting. The Company had a right to be "satisfied" of Savage's insurability. It cannot conceivably have been contemplated that the application would be approved if it were known that on the date of approval Savage was suffering from tuberculosis, and hence

---

4. The reinstatement clause provided: "Reinstatement.—At any time after default in payment of premium (unless the cash surrender value has been paid, or the term of any extended insurance has expired), this policy may be reinstated upon production of evidence of insurability satisfactory to the Company, and upon payment or reinstatement of any indebtedness to the Company hereon and paymet of arrears of premiums, with interest at the rate of five per cent per annum."

This is the standard form of reinstatement provision required on all policies of life insurance written in Pennsylvania. See Pennsylvania Insurance Company Law of 1921, as amended, 40 P.S. § 510 (k).

5. In Smith v. State Mutual Life Assurance Company of Worcester, 1936, 321 Pa. 17, at page 22, 184 A. 45, at page 47, the Court cited with approval the following statement in Lantz v. Vermont Life Insurance Co., 1891, 139 Pa. 546, 21 A. 80, 10 L.R.A. 577, with reference to lapsed policies and their reinstatement: "It is true it (the lapsed policy) may be restored to life by the subsequent payment of the premium, and its acceptance by the company. This, however, is a new contract by which the company agrees in consideration of the premium to continue in force a policy which had previously expired; in other words, it is a new assurance, though under the former policy. * * *" [321 Pa. 17, 184 A. 47.]

838

was no longer insurable. Clearly, such was not the intent of the parties.[6]

■■ Appellant also contends that the fact that the Company retained the application and back premium payments for a period of more than six weeks before acting on the application indicates an intent to reinstate the policy on the basis of the information submitted. It is true that retention of overdue premiums for an unreasonable period is evidence of the insurer's intent to revive. Smith v. State Mutual Life Assurance Co. of Worcester, 1938, 331 Pa. 1, 199 A. 358; Gross v. Home Life Insurance Co. of America, 1934, 112 Pa. Super. 96, 170 A. 432. However, the application in the instant case expressly provided that the Company was to have up to sixty days to act, and approval was in fact given within that period. Under the circumstances, retention of premiums by the insurer can have no probative value as evidence of intent to revive.

For the reasons stated, the judgment of the District Court will be affirmed.

See also, D.C., 11 F.R.D. 50.

6. It is noteworthy that one Pennsylvania case contains language to the effect that where the insured was informed after making a reinstatement application that he would need an operation "good faith * * * would require him to acquaint (the insurer) before accepting reinstatement of the policy, with the fact that he was going to the hospital for an operation." Mutual Life Ins. Co. of New York v. Bamford, 1938, 132 Pa.Super. 255, 261, 200 A. 907, 909.