**Holly A. BOYLAN, Appellant**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, INC.**

No. 08–4325.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 19, 2009.

Filed: Nov. 24, 2009.

Eugene Killian, Jr., Esq., Killian & Salisbury, Iselin, NJ, for Appellant.

Steven P. Del Mauro, Esq., McElroy, Deutsch, Mulvaney & Carpenter, Newark, NJ, Louis P. Digiaimo, Esq., McElroy, Deutsch, Mulvaney & Carpenter, Morristown, NJ, for Appellee.

Before: RENDELL, BARRY, and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

In 2001, Thomas Boylan ("Boylan") purchased a $3 million life insurance policy (the "Policy") from Jackson National Life Insurance Company, Inc. ("JNL"), and named his wife Holly Boylan ("Holly") the beneficiary. Boylan died in 2006, and JNL thereafter denied Holly's claim for benefits, asserting that the Policy had lapsed due to nonpayment of the annual premium. Holly promptly filed this diversity action against JNL seeking payment under the Policy. After discovery, the District Court granted JNL's motion for summary judgment and denied Holly's cross-motion for summary judgment. Holly appeals, and we will affirm.

## I.

We write solely for the parties, who are well-versed in the case, and therefore set forth only the essential facts. Boylan pur-

chased the Policy from JNL on February 27, 2001, under which an annual premium payment of $3,945.00 was due on or before February 27. In accordance with New Jersey law, the Policy provided a 31–day grace period, during which time coverage under the Policy would continue uninterrupted:

> **GRACE PERIOD FOR PAYMENT OF PREMIUMS** Any premium after the first which is not paid on or before the date it becomes due is in default. A grace period of 31 days will be allowed for payment of a premium in default. This certificate will continue in force during this period. If death occurs during the grace period, the unpaid premium on the premium basis then in effect will be deducted from the proceeds of the certificate.

Joint Appendix ("JA") 58. If Boylan failed to remit payment by the end of the grace period, he would be required to undergo formal reinstatement procedures to resume coverage. The Policy stated:

> **HOW A CERTIFICATE IN DEFAULT MAY BE REINSTATED** This certificate may be reinstated within five years after the date of any past due premium. Reinstatement is subject to:
>
> 1) receipt of evidence of insurability of the Insured satisfactory to the Company; and
>
> 2) payment of all past due premiums with interest from the due date of each premium.
>
> Interest at the rate of 8% per year compounded annually on past due premiums will be payable to the date of reinstatement.

JA 58.

JNL's automated policy administration system generated and distributed certain notices to policyholders during the annual billing cycle. Approximately 25 days before a premium payment was due, the system distributed a "Payment Notice" to the policyholder, alerting him or her to the upcoming due date. If payment was not received by the due date, the system automatically mailed a "Grace Period Notice" to the policyholder approximately ten days after the due date, notifying him or her of the missed payment, the opportunity to make the payment during the grace period, and the consequences of failing to submit a timely grace-period payment. Finally, if payment was not received by the end of the grace period, JNL's automated system generated and mailed a "Lapse Notice" to the policyholder, advising him or her that the policy was in default and formal reinstatement would be necessary to resume coverage.

Boylan's payment history was checkered. After paying the initial premium to obtain the Policy in 2001, he did not remit the required premium payment to JNL by the February 27 due date in 2002, 2003, and 2004, but did make the payments during the grace period. In 2005, however, Boylan did not make timely payment by February 27, and did not make a payment during the grace period.[1] Consequently, JNL's automated policy administration system mailed to Boylan a Lapse Notice, which contained a limited waiver of the formal reinstatement requirements if Boylan submitted payment before April 28, 2005. Boylan took advantage of JNL's offer by submitting his premium payment on April 22, 2005. Coverage under the Policy was therefore reinstated without incident.

In 2006, Boylan received a Payment Notice from JNL, but did not make payment on or before the February 27 due date.

---

**1.** It is undisputed that from 2002 through 2005, Boylan received Payment and Grace Period Notices at the appropriate times.

He subsequently received a Grace Period Notice, but did not make payment within the grace period. Like the year before, JNL mailed Boylan a Lapse Notice, dated March 9, 2006. The 2006 Lapse Notice was identical to the 2005 Lapse Notice: it contained a limited waiver of formal reinstatement requirements if Boylan remitted payment before April 28, 2006. The 2006 Lapse Notice stated in pertinent part:

> We recently sent you a Grace Period Notice to inform you that unless we received a minimum payment by March 30, 2006, your policy would lapse on that date. We have not received your payment.
>
> **Please note that your policy has lapsed and that all coverage under this policy has ended.**
>
> If the amount due is received at the address below during the insured's lifetime and before April 28, 2006, the policy will be automatically reinstated and we will waive additional requirements. This offer to reinstate automatically is not a waiver of the terms of the policy in the event of any future default of payment of premiums.
>
> Otherwise, you will be required to pay additional unpaid premiums plus interest and complete the enclosed Reinstatement Application. Acceptance of the premium does not reinstate the policy; your policy will remain lapsed and no coverage is provided until this application has been approved by [JNL].

JA 648 (emphasis in original). This time, Boylan did not submit a payment before April 28, 2006. Instead, he transferred electronically $3,945.00 to JNL on May 19, 2006, but did not submit a completed reinstatement application. Approximately one month later, JNL mailed to Boylan a letter dated June 16, 2006, notifying him that it had received the electronic payment, but that the Policy had lapsed and the payment alone was insufficient to reinstate coverage. The letter invited Boylan to complete a reinstatement application (an additional copy of which was enclosed) if he wished to resume coverage under the Policy. Under separate cover, JNL issued a check to Boylan—also dated June 16, 2006—in the amount of $3,945.00, essentially returning the electronic payment.[2] Boylan deposited this check and it was presented to JNL's bank for payment on July 3, 2006. There were no communications between JNL and Boylan from May 19, 2006 until Boylan received JNL's June 16, 2006 letter in the mail.

Boylan died on July 5, 2006. On August 11, 2006, Holly submitted a claim to JNL for payment under the Policy, and JNL denied the claim on August 22, 2006. Holly filed this breach-of-contract action on August 29, 2006 and, as stated, the District Court granted JNL's motion for summary judgment and denied Holly's cross-motion for summary judgment. This timely appeal followed.[3]

---

**2.** The check was mailed on June 20, 2006. JA 591.

**3.** The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have. *Vitalo v. Cabot Corp.*, 399 F.3d 536, 542 (3d Cir.2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genu-

ine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We must view the record in the light most favorable to Holly, the non-movant, and must also draw all reasonable inferences in her favor. *See Vitalo*, 399 F.3d at 542; Fed.R.Civ.P. 56(c). The underlying facts of the case—in which New Jersey substantive law applies, *see Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir.2008) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938))—are not in dispute.

## II.

Holly does not dispute that the Policy lapsed in 2006 when her husband failed to remit payment by the end of the grace period or by the extended April 28 deadline set forth in the 2006 Lapse Notice. Nor does she claim that her husband's transmittal of the premium on May 19, 2006 by itself sufficed to reinstate the Policy. Her sole claim here, as it was before the District Court, is that by holding Boylan's May 19 electronic payment for approximately a month with no communications to him, JNL waived its contractual right to require Boylan's completion of formal reinstatement requirements. Accordingly, she argues, the Policy had been automatically reinstated as a matter of law before her husband's death, and that she is therefore entitled to the Policy's benefits. While sympathetic to the difficult and unfortunate circumstances prompting this action, we are impelled to conclude that Holly's argument finds no refuge in law.

An insurance policy generally should be construed according to its plain and ordinary language. *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255, 1260 (1992); *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 582 A.2d 1257, 1260 (1990). The parties agree that the Policy's language is unambiguous and required by New Jersey law; therefore, the ordinary rules of construction apply, and the express terms of the Policy control. *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098, 1103 (1994). New Jersey law requires that all life insurance policies within the state contain a grace period of 30 days, during which an insured may submit payment without interruption of coverage. N.J. Stat. Ann. § 17B:25–3. Another statutory provision governs reinstatement of lapsed life insurance policies. It states:

There shall be a provision that unless:

a. the policy has been surrendered for its cash surrender value, or

b. its cash surrender value has been exhausted, or

c. the paid-up term insurance, if any, has expired,

the policy will be reinstated at any time within 3 years … from the due date of the first premium in default upon written application therefor, the production of evidence of insurability satisfactory to the insurer, the payment of all premiums in arrears and the payment or reinstatement of any indebtedness to the insurer upon the policy, all with interest at a specified rate and which may be compounded as specified.

N.J. Stat. Ann. § 17B:25–9. Given this clear text, it is beyond dispute that once a life insurance policy has lapsed for nonpayment, mere submission of an overdue premium—even if accepted by the insurer—is insufficient to reinstate coverage. *See, e.g., Glezerman v. Columbian Mut. Life Ins. Co.*, 944 F.2d 146, 154 (3d Cir.1991); *Hogan v. John Hancock Mut. Life Ins. Co.*, 195 F.2d 834, 837 (3d Cir.1952). Because Boylan did not submit a completed reinstatement application or demonstrate his continued insurability to JNL, his remittance of the 2006 premium on May 19, 2006 was insufficient to reinstate the Policy.

Holly argues, and JNL concedes, that any of the Policy's provisions—including the formal reinstatement requirements mandated by N.J. Stat. Ann. § 17B:25–9— may be waived. Indeed, JNL expressly waived those very reinstatement requirements in the 2005 and 2006 Lapse Notices, subject to the condition that Boylan remit payment *before* April 28. " 'Waiver' is the intentional relinquishment of a known right. It is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have

demanded and insisted on." *W. Jersey Title & Guaranty Co. v. Indus. Trust Co.*, 27 N.J. 144, 141 A.2d 782, 786 (1958) (quoting *George F. Malcolm, Inc. v. Burlington City Loan & Trust Co.*, 115 N.J. Eq. 227, 170 A. 32, 34 (N.J.Ch.1934)) (internal quotation marks omitted). Put differently,

> [i]t is requisite to waiver of a legal right that there be "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part[.] A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition."

*Id.* at 786–87 (quoting *Aron v. Rialto Realty Co.*, 100 N.J. Eq. 513, 136 A. 339, 341 (N.J.Ch.1927), *aff'd*, 102 N.J. Eq. 331, 140 A. 918 (N.J.1928)). In the insurance context, a waiver

> is predicated upon the acts or conduct of the insurer with knowledge of the breach tending to show a recognition of the policy, or an intent to relinquish the right to declare a forfeiture for the known breach.... [I]t is always open to the assured to show a waiver of policy provisions when the conduct of the insurer gives reasonable ground to the assured, as a layman ... to believe that such a forfeiture will not be incurred and the assured relies thereon to his prejudice.

*Bruni v. Prudential Ins. Co. of Am.*, 100 N.J.Super. 154, 241 A.2d 455, 460 (N.J.Super.Ct.App.Div.1967) (Carton, J., dissenting), *adopted as the Opinion of the Court*, 51 N.J. 408, 241 A.2d 449, 450 (1968).

In *Glezerman*, the plaintiff sued an insurance company (Columbian) from which her deceased husband had purchased a life insurance policy. 944 F.2d at 148.[4]

The policy had lapsed for nonpayment, and Columbian required the policyholder to complete a reinstatement application. *Id.* at 149. The decedent completed and submitted the application along with the overdue premium, and Columbian denied reinstatement approximately sixty days later. *Id.* at 154. The plaintiff argued that Columbian had waived formal reinstatement requirements by retaining the overdue premium payment and the reinstatement application for an unreasonable amount of time. *Id.* We rejected the argument, stating as follows:

> An insurer has a reasonable amount of time in which to demand proof of insurability and then decide whether to reinstate. If the insurer affords the insured a reasonable opportunity in which to comply, the insured's response is a condition precedent for reinstatement. If these conditions are met, mere payment of the premium is insufficient for reinstatement; the insured must submit evidence of insurability. The only exception is waiver on the part of, or estoppel against, the insurance company. In the case of Benjamin Glezerman, the Glezermans submitted the application for reinstatement on May 23, 1986. After reviewing the medical records, the application for reinstatement was denied on July 29, 1986.
>
> Under Pennsylvania law, for example, the reinstatement provision contemplates the making of a new contract between the parties. The insurance company is not required to reinstate absent evidence of insurability. *However, retaining an overdue premium for an extended period of time is evidence that a policy has been reinstated.* The benchmark for determining a reasonable period may be a period specified by the insurance contract. In *Hogan*, the poli-

---

4. The plaintiff also sued her insurance broker and the policy administrator. The claims against those defendants are not germane here.

cy gave the insurance company sixty days within which to act, and it did so. The reinstatement provision in the Glezermans' policy did not specify the period in which Columbian had to evaluate the insurability of the applicant. Columbian did respond in just over sixty days, however.

There is no evidence in the record that Columbian acted in a dilatory or even lackadaisical manner. We therefore hold that Columbian acted within a reasonable period of time in responding to the Glezermans' application.

*Id.* at 153–54 (emphasis added).

Relying on this passage, the District Court found as a matter of law that JNL had not waived its right to require Boylan to undertake formal reinstatement procedures, and that its month-long retention of the May 19, 2006 premium payment was neither unreasonable nor indicative of a waiver. JA 11–12. We agree. The 2006 Lapse Notice set forth a limited waiver of formal reinstatement requirements, subject to the explicit condition that Boylan pay the premium before April 28, 2006. JA 648. *"Otherwise,"* it stated, "you will be required to pay additional unpaid premiums plus interest *and complete the enclosed Reinstatement Application."* *Id.* (emphasis added). Finally, the Lapse Notice stated in no uncertain terms that *"[a]cceptance of the premium does not reinstate the policy; your policy will remain lapsed and no coverage is provided until this application has been approved by [JNL]."* JA 648 (emphasis added). Far from a "clear, unequivocal, and decisive act" evincing JNL's intent to relinquish the right to require a reinstatement application and proof of insurability, *W. Jersey*

*Title & Guaranty Co.,* 141 A.2d at 787, the 2006 Lapse Notice documented JNL's affirmative intent to *retain* the right to demand formal reinstatement procedures if payment was not made before April 28, 2006.

Holly attacks the District Court's application of *Glezerman,* contending that it erroneously imposed a bright-line rule of reasonableness and that a jury should decide whether retention of the premium was reasonable. We disagree. The District Court stated expressly that "[t]here is no bright line rule for determining the reasonableness of the time period that a premium has been retained," and that "the *Glezerman* court indicated that a more indepth examination of the circumstances is warranted." JA 10–11. Indeed, we explained in *Glezerman* that an insurer's extended retention of an overdue premium payment was simply *"evidence* that a policy has been reinstated." *Glezerman,* 944 F.2d at 154 (emphasis added). We did not purport categorically to find a waiver for any particular length of time during which an insurer retains an overdue payment; instead, the delay is but a factor bearing on the "intentional-relinquishment" standard set forth by well-settled New Jersey law. Here, JNL placed Boylan on notice time and again that his failure to remit payment before the end of the grace period—and later, before April 28, 2006— would result in a lapsed Policy. In such an event, unless and until a reinstatement application had been completed by Boylan and accepted by JNL, the Policy would be in default and no coverage would be available in the interim. Based on its prior communications to Boylan, therefore, we conclude that JNL did not waive its right to enforce the Policy as written.[5]

---

5.  Holly argues that "[t]his appeal is not about correspondence that JNL sent *before* Boylan's electronic funds transfer ('EFT') of May 19, 2006." Holly Rep. Br. at 1 (emphasis in original). We disagree. One cannot adequately assess JNL's intent (or lack thereof) to relinquish its contractual rights *after* receiving the overdue premium without resort to the *prior* communications. That these communi-

In any event, we also reject Holly's argument that JNL's month-long retention of the overdue premium payment was, in this case, unreasonable (or at least presented a jury question). JNL submitted an affidavit to the District Court explaining that upon receipt of a payment that cannot be applied to a particular policy (including a lapsed policy), it places the funds into a "suspense account" for approximately fifteen days in order to allow the insured to submit documentation (e.g., an explanation for why the payment was submitted, a completed reinstatement application, etc.). JA 573–75.[6] After fifteen days, JNL conducts research to determine why the funds were received, and takes appropriate action thereafter. JA 575. Upon review, we find this procedure reasonable and this case indistinguishable from *Glezerman*.[7] Holly argues that JNL could have responded more quickly using its automated policy administration system. We hold, however, that Holly has produced no evidence that JNL "acted in a dilatory or even lackadaisical manner," *Glezerman*, 944 F.2d at 154, that its retention of the overdue premium was reasonable as a matter of law, and accordingly that such retention did not result in a waiver of its contractual rights as set forth in the Policy.[8]

cations demonstrate unequivocally what JNL's expectations would be in the event that Boylan did not timely submit payment is not a reason to disregard them.

6. In her reply brief, Holly avers that there is a factual irregularity with respect to JNL's suspense account protocol. *See* Holly Rep. Br. at 3. Because the check returning Boylan's electronic payment was "drawn on a general account and not a trust account," she says, there is no record evidence that JNL maintained a separate suspense account for payments that could not be posted to a particular policy. *Id.* Whether or not the funds were actually held in a distinct and dedicated bank account, however, is immaterial to our analysis. The point is that the funds were "suspended"—reasonably, in our view—for fifteen days to allow the insured sufficient time to submit supplemental documentation before JNL took action on the transmitted funds. And there *is* undisputed record evidence for this proposition. JA 573–75.

7. The District Court recognized, as do we, that the policyholder in *Glezerman* had submitted a reinstatement application, whereas here Boylan had not. *See Glezerman*, 944 F.2d at 149, 154. Holly argues that JNL's retention of the overdue premium payment

sans application is distinguishable from *Glezerman* because in this case there was nothing for JNL to review, making the month-long retention of funds unnecessary and therefore unreasonable. We conclude to the contrary. JNL's stated procedures for retaining funds unaccompanied by a completed reinstatement application are reasonably designed to promote efficiency when a policyholder submits documentation soon after submitting payment. This procedure—even in the absence of any reinstatement application to review—is simply not indicative of an intentional waiver of JNL's contractual rights, nor do we find it unreasonable.

8. Holly also argues that we should apply by analogy cases interpreting N.J. Stat. Ann. § 17B:26–7, the statutory provision governing reinstatement of *health insurance* policies. The District Court rejected this argument, and we do so as well. While the cases Holly cites generally concern the temporal reasonableness of an insurer's response to an insured's overdue payment and/or reinstatement application, they interpret statutory language not appearing in § 17B:25–9, which is unambiguous and controlling here. The cited cases are irrelevant to the issue of whether JNL intentionally *waived* the statutorily required reinstatement provision appearing in Boylan's Policy.

## III.

For the reasons expressed above, we will affirm the judgment of the District Court.